PUBLISH

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED

U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
03/12/99
THOMAS K. KAHN
CLERK

No. 96-9212

D.C. Docket Nos. 7:92-CV-150-HL;
6:95-CV-00053;
7:95-CV-00092

NICOLAS CHARLES;
CHARITE ASSEIGNE, et al.,

Plaintiffs, Counter-Defendants,
Appellants, Cross-Appellees,

versus

JOHN BURTON; FELIX BURTON,
et al.,

Defendants, Counter-Claimants,
Appellees, Cross-Appellants.

Appeals from the United States District Court
for the Middle District of Georgia

**(March 12, 1999)**

Before HATCHETT, Chief Judge, RONEY and CLARK, Senior Circuit Judges.

PER CURIAM:

The entire panel concurs in Parts I, II, and Part IV which discusses whether the appellees "utilized" Wilner Luxama's services, and Part V which holds that appellees John and Felix Burton may be held liable for actual damages for their failure to verify Luxama's registration

under 29 U.S.C. § 1842. Judge Roney dissents from Part III, which holds that the Burtons were joint employers and therefore statutorily required to carry insurance or a liability bond.

In this case involving the Agricultural Workers Protection Act, 29 U.S.C. § 1801-1872 (1994) (AWPA), fifteen migrant farm workers challenge the district court's grant of summary judgment in favor of the appellees John Burton, Felix Burton, Little Rock Produce Company and Bobby Hall. The district court found that the appellees were not joint employers of the farm workers under the AWPA and did not award the farm workers actual damages for a violation of the AWPA's registration provision. We affirm in part, reverse in part and remand.

## I. BACKGROUND

John Burton and Felix Burton (collectively, the Burtons) operated a farm in Brooks County, Georgia. The Burtons principally grew cotton, corn, soy beans and peanuts on their farm. In 1990, the Burtons decided to grow other vegetables -- snap beans and cucumbers -- and contracted with Little Rock Produce Company (Little Rock), a produce packinghouse, and its president and principal stockholder, Bobby Hall, to subsidize these new crops and to advance money for labor costs. Both were to share in the profits. Little Rock also agreed to supply the seeds for the snap bean and cucumber crops, boxes for the harvest and a trailer to transport the beans, and the Burtons in turn agreed to market these crops through Little Rock.

Pursuant to the contract, Little Rock required the Burtons to fertilize the snap bean crop and to obtain labor for its harvest. In 1990, the Burtons contacted the Georgia Department of Labor to obtain workers for the snap bean crops, and Paul Emil Paul and Wilner Luxama, farm labor contractors (FLC), agreed to supply them with workers for the snap bean harvest. The Burtons eventually agreed to pay Luxama a set amount of money per box of snap beans that his

2

crew picked, and Luxama paid each worker a set amount per box.[1] The 1990 harvest occurred too late in the snap bean season, and consequently, Luxama's workers spent a total of one-half of a day working on the Burtons' farm that year.

The next year, Luxama and his crew returned to the Burtons' farm to harvest the 1991 snap bean crop. Luxama transported the 25 to 35 members of his Florida-based crew between the Burtons' farm and their temporary housing in Ashburn, Georgia.[2] The Burtons would direct Luxama to a particular snap bean field, and his crew picked all of the field's beans. Luxama directed and supervised the harvest of the snap beans, and the Burtons observed the progress of the workers approximately two to three times a day. As they picked the snap beans, the workers placed them in the boxes that Little Rock provided. At the end of the day, Luxama weighed all of the boxes of snap beans, and a crew member placed the boxes onto a trailer that Little Rock owned. The Burtons then transported the snap beans to Little Rock's packinghouse, where a broker selected and sold them.

The Burtons failed to earn a substantial profit from the 1991 snap bean crop, but they decided to plant and harvest them for the next year.[3] In 1992, Luxama returned with his crew to harvest the crop. Luxama's registration as a farm labor contractor with the Department of Labor (as the AWPA requires) had lapsed in 1991 because he had failed to pay a fine that the

---

[1] According to Luxama's deposition testimony, the Burtons agreed to pay him between $3.75 and $4 per box. Luxama in turn paid his workers $2.50 per box for the first picking, and then $3 per box for the second and additional pickings. Luxama provided his workers a ticket for each box they picked, and then paid them for each ticket the worker returned to him.

[2] Luxama recruited his workers (Haitian immigrants) from Miami to pick crops, including snap beans, in Georgia. He also helped the workers find housing when they arrived in Georgia, although the crew paid for all of its housing expenses.

[3] Since the 1991 crop failed to make a profit, the Burtons did not reimburse Little Rock's advancements for their labor costs.

Department of Labor had imposed. See 29 U.S.C. § 1811. As a result of this lapse and his

inability to pay the fine, Luxama failed to purchase liability insurance for the vehicles used to

transport his crew as the AWPA requires. See 29 U.S.C. § 1841.[4] The Burtons failed to check

Luxama's certification as an FLC, and failed to learn that Luxama no longer carried the required

insurance. See 29 U.S.C. §§ 1841(b) (duty to carry insurance of liability bond), 1842 (duty to

check registration). On the morning of June 3, 1992, one of Luxama's trucks overturned while

transporting the workers to the fields, killing the driver and two workers and seriously injuring

others.[5]

In December 1992, the appellants sued John Burton, Felix Burton, Little Rock and Hall

for violations of the AWPA, the Fair Labor Standards Act (FLSA), 29 U.S.C. § 201 et seq. and

Georgia's common law of negligence. The appellants alleged, in part, that the appellees violated

the "registration, vehicle safety, vehicle insurance, record keeping, wage statement and wage

payment provisions of the AWPA," and the appellees moved for summary judgment. After

---

[4] Section 1841(b) of the AWPA provides:

> (1) When using, or causing to be used, any vehicle for providing
> transportation . . . each agricultural employer, agricultural association, and
> farm labor contractor shall . . .
> (C) have an insurance policy or a liability bond that is in effect which
> insures the agricultural employer, the agricultural association, or the farm
> labor contractor against liability for damages to persons or property
> arising from the ownership, operation, or the causing to be operated, of
> any vehicle used to transport any migrant or seasonal agricultural worker.

See 29 U.S.C. 1841(b)(1)(C).

[5] The accident killed appellant Jean J. Maissoneuve (Avelie Maissoneuve appears as the
personal representative of his estate), rendered appellant Edner Phillipe a paraplegic, and caused
various injuries to appellants Nicolas Charles, Charite Asseigne, Miguel Aubout, Samson
Germain, Marcel Jean-Baptiste, Alexandre Joseph, Marcel Joseph, Fito Pierre, Frankel Pierre,
Fatami Saint Fleur, Gerard Simeon, Lavius Dit Servius Vil and Jean Jacques Vytelle. We shall
refer to these workers collectively as the appellants.

4

conducting an evidentiary hearing, the district court held that the appellees did not "employ" the workers within the meaning of the AWPA and the FLSA, and granted the appellees summary judgment. See Charles v. Burton, 857 F. Supp. 1574, 1583 (M.D. Ga. 1994). This conclusion precluded the appellants from recovering any damages for the appellees' failure to ensure that Luxama's truck carried either insurance or a liability bond. See 29 U.S.C. § 1841(b)(1)(C).

Thereafter, the appellees moved for summary judgment on the remaining claims, with (1) Little Rock and Hall arguing that they had not "utilized" the services of Luxama pursuant to the 29 U.S.C. § 1842; and (2) the Burtons alleging that although they had utilized Luxama's services and violated the registration verification provisions under 29 U.S.C. § 1842, the workers were entitled only to statutory damages under 29 U.S.C. § 1854(c)(1). The district court granted Little Rock's and Hall's motions for summary judgment, finding that they had not "utilized" the services of Luxama and his crew. See Charles v. Burton, No. 92-150-VAL (M.D. Ga. Mar. 7, 1995).[6] The district court later found the Burtons liable for $350 in statutory damages per worker for the violation of section 1842, but refused to award actual damages because the workers' injuries were "too far removed" from the Burtons' failure to verify Luxama's registration. See Charles v. Burton, No. 7:92-cv-150 (M.D. Ga. Sept. 8, 1995) (granting

---

[6] Appellee Bobby Hall died in October 1995, and the district court treated the appellants' motion for substitution of party as a motion to substitute Bobby Hall, Jr. (the administrator of Bobby Hall's estate) as a defendant, and granted the appellants' motion. See Charles v. Burton, No. 7:92-cv-150 (M.D. Ga. July 30, 1996). Appellee Hall contends that the district court erred in substituting him pursuant to Federal Rules of Civil Procedure 25(a). We find that the district court did not abuse its discretion in substituting Bobby Hall, Jr., as a defendant after the appellants timely filed a motion for substitution pursuant to Rule 25(a). See Virgo v. Riviera Beach Assocs., Ltd., 30 F.3d 1350, 1357-58 (11th Cir. 1994) (interpreting Federal Rule of Civil Procedure 25(c)).

summary judgment); <u>Charles v. Burton</u>, No. 92-150-VAL (M.D. Ga. July 26, 1996) (awarding statutory damages).[7]

## II. ISSUES

The issues we discuss are: (1) whether the district court erred in finding that the appellees were not "joint employers" of the appellants, and were thus not liable under section 1841 of the AWPA (Part III); (2) whether the district court erred in finding that appellees Little Rock and Hall did not "utilize" the services of the appellants under section 1842 of the AWPA (Part IV); and (3) whether the district court erred in failing to award the appellants actual damages for the Burtons' violation of that provision (Part V).[8]

## III. JOINT EMPLOYMENT

In 1983, Congress enacted the AWPA "to remove the restraints on commerce caused by activities detrimental to migrant and seasonal agricultural workers; to require farm labor contractors to register under this chapter; and to assure necessary protections for migrant and seasonal agricultural workers, agricultural associations, and agricultural employers." 29 U.S.C. § 1801. Included in the AWPA are requirements (1) that an FLC obtain a certificate from the Secretary of Labor authorizing it to perform its duties, <u>see</u> 29 U.S.C. § 1811(a); 29 C.F.R. § 550.40 (1997); (2) that a person utilizing the services of an FLC verify the existence of such

_____

[7] In August 1995 the appellants also filed diversity lawsuits alleging common law negligence claims against Little Rock and the Burtons. The district court consolidated those claims with the AWPA and FLSA claims and granted summary judgment in favor of Little Rock and the Burtons on the common law negligence claims. <u>See</u> Charles v. Burton, No. 7:92-150 (M.D. Ga. Nov. 30, 1995) (consolidating); Charles v. Burton, No. 7:92-cv-150 (M.D. Ga. Aug. 20, 1996) (granting summary judgment).

[8] The appellants raise for the first time the issue of whether the appellees formed a partnership or joint venture under Georgia law. This court, however, will not consider on appeal issues not raised before the district court. <u>See</u> Narey v. Dean, 32 F.3d 1521, 1526-27 (11th Cir. 1994).

6

certificate, see 29 U.S.C. § 1842; and (3) that an FLC and an agricultural employer carry either an insurance policy or liability bond covering any vehicle used to transport agricultural workers, see 29 U.S.C. § 1841; 29 C.F.R. 500.120.

The appellees contend, and the district court agreed, that they did not "employ" the appellants, that they were not "agricultural employers" or "joint employers" within the meaning of the AWPA and that the AWPA did not require them to carry insurance or a liability bond under section 1841.[9]  See Charles, 857 F. Supp. at 1583.  The definition of "employ" is the same under the AWPA and the FLSA.  See 29 U.S.C. 203(1); 29 U.S.C. § 1802(2).  An entity "employs" a person under the AWPA and the FLSA if it "suffers or permits" the individual to work.  See 29 U.S.C. § 203(g); 29 C.F.R. § 500.20(h)(1).  "An entity 'suffers or permits' an individual to work if, as a matter of economic reality, the individual is dependent on the entity." Antenor v. D&S Farms, 88 F.3d 925, 929 (11th Cir. 1996) (quoting Goldberg v. Whitaker House Coop., Inc., 366 U.S. 28, 34 (1961)).

The AWPA's concept of "employ" also includes "the joint employment principles applicable under the [FLSA]."  Aimable v. Long & Scott Farms, 20 F.3d 434, 438 (11th Cir.),

_____

[9] The AWPA defines "agricultural employer" as "any person who owns or operates a farm, ranch, processing establishment, cannery, fin, packing shed or nursery, or who produces or conditions seed, and who either recruits, solicits, hires, employs, furnishes, or transports any migrant or seasonal agricultural worker." 29 U.S.C. § 1802(2).  The AWPA defines "migrant agricultural worker" as "an individual who is employed in agricultural employment of a seasonal or other temporary nature, and who is required to be absent overnight from his permanent place of residence." 29 U.S.C. § 1802(8)(A).

7

cert. denied, 513 U.S. 943 (1994); 29 C.F.R. § 500.20(h)(5).[10]  According to the AWPA regulations,

> joint employment means a condition in which a single individual stands in the relation of an employee to two or more persons at the same time.  A determination of whether the employment is to be considered joint employment depends upon all the facts in a particular case.  If the facts establish that two or more persons are completely disassociated with respect to the employment of a particular employee, a joint employment situation does not exist.

29 C.F.R. § 500.20(h)(5).  The issue in joint employment cases "is not whether the worker is more economically dependent on the independent contractor or grower, with the winner avoiding responsibility as an employer."  Antenor, 88 F.3d at 932.  Instead, the AWPA "envisions situations where a single employee may have the necessary employment relationship with not only one employer but simultaneously such a relationship with an employer and an independent contractor."  Antenor, 88 F.3d at 932 (quoting H.R. Rep. No. 97-885, 97th Cong., 2d Sess. (1982) 7, 1982 U.S.C.C.A.N. 4547, 4553).

This court, and the AWPA regulations, have considered the following regulatory factors as guidance in determining economic dependence, and ultimately, whether an employment relationship exists:  (1) whether the agricultural employer has the power, either alone or through the FLC, to direct, control or supervise the workers or the work performed (such control may be

---

[10]  In 1997, the Department of Labor amended the AWPA regulations, attempting to remedy the misconceptions surrounding the definition of "joint employment."  This clarification of joint employment focuses more closely on the "economic dependence" test that federal courts had previously established.  See Migrant and Seasonal Agricultural Worker Protection Act, 62 Fed. Reg. 11734, 11745-46 (1997) (codified at 29 C.F.R. pt. 500 (1997)).  This court accords significant weight to the statutory interpretation of the executive agency charged with implementing the statute being construed, particularly when that interpretation is incorporated in a formally published opinion.  See Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837, 844 (1984); Caro-Galvan v. Curtis Richardson, Inc., 993 F.2d 1500, 1507 (11th Cir. 1993).

either direct or indirect, taking into account the nature of the work performed and a reasonable degree of contract performance oversight and coordination with third parties); (2) whether the agricultural employer has the power, either alone or in addition to another employer, directly or indirectly, to hire or fire, modify the employment conditions, or determine the pay rates or the methods of wage payment for the workers; (3) the degree of permanency and duration of the relationship of the parties, in the context of the agricultural activity at issue; (4) the extent to which the services that the workers rendered are repetitive, rote tasks requiring skills that are acquired with relatively little training; (5) whether the activities that the workers performed are an integral part of the overall business operation of the agricultural employer; (6) whether the work is performed on the agricultural employer's premises, rather than on premises that another business entity owns or controls; and (7) whether the agricultural employer undertakes responsibilities in relation to the workers that employers commonly perform, such as preparing and/or making payroll records, preparing and/or issuing pay checks, paying FICA taxes, providing workers' compensation insurance, providing field sanitation facilities, housing or transportation, or providing tools and equipment or materials required for the job (taking into account the amount of the investment). See 29 C.F.R. § 500.20 (h)(5)(iv)(A)-(G); see also Antenor, 88 F.3d at 932; Aimable, 20 F.3d at 439.

We will consider all of the enunciated factors as guidance, with "the weight of each factor [depending] on the light it sheds on the farmworkers' economic dependence (or lack thereof) on the alleged employer, which in turn depends on the facts of the case." Antenor, 88 F.3d at 932-33 (citing Aimable, 20 F.3d at 440). A determination of employment status under the AWPA and the FLSA is a question of law subject to de novo review. See Antenor, 88 F.3d at 929; Aimable, 20 F.3d at 440.

9

**1. Whether the appellees had the power to direct, control or supervise the appellants (directly or indirectly).**

Prior to 1997, the AWPA regulations split this factor into two concepts: first, the nature and degree of control over the workers; and second, the degree of supervision over their work. The district court also considered these two concepts separately. As for the nature and degree of control of the appellants, the district court found that "there is absolutely no indication . . . that defendants [Hall] and Little Rock retained the 'right to dictate the manner in which the details of the harvesting function [were] executed.'" Charles, 857 F. Supp. at 1580 (quoting Donovan v. Brandel, 736 F.2d 1114, 1119 (6th Cir. 1984)). The district court also found that "although defendants John and Felix Burton retained a degree of control over the harvest in that they directed which fields would be picked, they maintained no control over the manner in which the beans were picked. The details of the harvest were left to [Luxama]." Charles, 857 F. Supp. at 1580.

In Aimable, this court found that the focus of this concept "is more properly limited to specific indicia of control (for example, direct employment decisions such as whom and how many employees to hire, whom to assign to specific tasks, and how to design the employee's management structure)." Aimable, 20 F.3d at 440. Antenor identified several other indicia of control, including: when work should begin on a particular day; whether a worker should be disciplined; whether the agricultural employers were free to delay or stop the workers directly from continuing their work; and whether the agricultural employers could assign work to specific workers indirectly. See Antenor, 88 F.3d at 933-34. The evidence presented demonstrated that while Little Rock supplied boxes to the Burtons to be used for the appellants, neither Hall nor Little Rock engaged in direct or indirect control over the appellants. See, e.g.,

10

Patel v. Wargo, 803 F.2d 632, 638 (11th Cir. 1986) (finding that company's president, director and principal stockholder did not take a sufficiently active role to be an "employer" under the FLSA). The Burtons, however, exhibited some control. For example, the Burtons determined the particular fields that they wanted the appellants to cultivate, determined when the appellants would begin picking each field and supplied appellants with boxes that Little Rock provided. They did not, however, tell Luxama when to commence picking each day and did not determine whether a specific worker should be disciplined. See Hodgson v. Griffin & Brand of McAllen, Inc., 471 F.2d 235, 237 (5th Cir.) (finding that agricultural worker exercised sufficient control in determining when the workers were to commence harvesting each day to be an "employer" under the AWPA), cert. denied, 414 U.S. 819 (1973). Therefore, although we agree with the district court that this aspect of the first factor weighs against finding that the appellants were economically dependent on Hall and Little Rock, we find that the Burtons exercised some aspects of control that weigh in favor of finding that the appellants were economically dependent on the Burtons.

The second aspect of this factor concerns the degree of direct or indirect supervision that the agricultural employer enjoyed over the workers. The necessary supervision under this factor "includes overseeing the pickers' work and providing direction," while keeping in mind "special aspects of agricultural employment." Antenor. 88 F.3d at 934-35. In an agricultural setting, "the grower is not expected to look over the shoulder of each farmworker every hour of every day. Thus, it is well settled that supervision is present whether orders are communicated directly to the laborer or indirectly through the contractor." Antenor, 88 F.3d at 935 (quotations and citations omitted). "Infrequent assertions of minimal oversight," however, fail to satisfy the supervision necessary under this factor. See Aimable, 20 F.3d at 441.

11

The workers alleged, and the record reveals, that the Burtons directed Luxama to tell the appellants to harvest certain areas of their farm and monitored their harvesting several times per day.[11] The Burtons, however, entrusted most of the direct supervision and oversight over the appellants in Luxama. We believe that the Burtons' supervision overcomes Aimable's "infrequent assertions of minimal oversight" and instead resembles Antenor's definition of indirect control. The workers, however, have not presented any evidence that Little Rock or Hall directly or indirectly supervised their work in any fashion. We therefore find that this first factor favors a conclusion that the appellants were economically dependent on the Burtons, based on their indirect control and supervision. We also find that this factor weighs against such a conclusion as for Little Rock and Hall.

**2. Whether the appellees had the direct or indirect power to hire, fire, modify the employment conditions or determine the pay rates or the methods of wage payment for the appellants**.

The district court also considered aspects of this factor separately. First, the appellants argued that the appellees ultimately shared responsibility for their wages, because the appellees controlled the amount of seeds planted and fields harvested and paid Luxama a specific price for each box of beans harvested, and that Luxama then paid the appellants a set price for each box that they individually harvested. The appellees rely on Rutherford Food Corp. v. McComb, where the Supreme Court found the operator of a slaughterhouse exerted indirect influence over the pay rates for the boners when he controlled the number of cattle slaughtered and boned. 331 U.S. 722, 730 (1947). The district court found that Aimable precluded the reliance on McComb,

---

[11] Appellant Asseigne observed the Burtons near their worksite often, and noticed that they talked to Luxama. See Asseigne Dep. at 31. Appellant Aubout stated that he observed the Burtons talking to Luxama, and, since most of the appellants did not speak English, Luxama then instructed the appellants in their native language what the Burtons needed. See Aubout Dep. at 17-18.

12

finding this "leap of logic" -- since the appellees controlled the amount of money Luxama received, and since Luxama controlled the amount the appellants received, that the appellees therefore controlled the amount the appellants received -- to be unfounded. See Aimable, 20 F.3d at 442 ("Unfortunately for appellants, the laws that bind the Euclidian world do not apply with equal force in federal employment law."); Charles, 857 F. Supp. at 1580. The appellants presented no other convincing evidence to show that the appellees exercised direct or indirect power to determine their pay rates or the methods of payments. In fact, Luxama controlled their pay rates, determined how they received their pay and when they received payment.

The appellants also argue that the Burtons, on behalf of their enterprise with Hall and Little Rock, delegated the task of assembling a picking crew to Luxama and therefore indirectly enjoyed the rights to hire, fire or modify the employment conditions of the appellants. In Antenor, this court found that evidence showing that the agricultural employers "dictated the workers' hours, a condition of employment, by deciding when the work was to begin . . . [and] forcing the pickers to stop picking when prices were bad[,]" indicated that they enjoyed these rights. See Antenor, 88 F.3d at 935. The Burtons planted and fertilized the snap bean crop and directed Luxama to have the appellants harvest it on certain dates. While the Burtons did not enjoy a "veto" power over Luxama's hiring decisions and did not modify such employment conditions as the picker's daily hours, they decided ultimately when the appellants would begin picking their snap bean crop, where they would pick it and for how long. Thus, elements of this factor weigh in favor of the appellants being economically dependent on the Burtons. Again, though, the appellants present no evidence that either Hall or Little Rock directly or indirectly enjoyed this power.

**3. The degree of permanency and duration of the relationship of the parties**.

The district court did not consider this factor, following Aimable's holding that this factor is irrelevant in analyzing joint employment. See Aimable, 20 F.3d at 443-44; Charles, 857 F. Supp. at 1579. The Aimable court found that this factor helped determine whether the FLC, as opposed to any other putative agricultural employer, employed the farm workers. See Aimable, 20 F.3d at 444. We note that the Aimable court nonetheless analyzed this factor, and, given its inclusion in the AWPA's regulations, feel that its analysis should provide this court guidance in determining "the economic reality of all the circumstances concerning whether the putative employee is economically dependent upon the alleged employer." 29 C.F.R. 500.20(h)(5)(iv)(C); Antenor, 88 F.3d at 933.[12]

The appellants allege that they had an ongoing relationship with the appellees because they spent most of their time during the 1992 snap bean harvest season working for them. Additionally, they contend that Luxama's relationship with the appellees was longstanding in that he had provided workers for their snap bean harvests between 1990 and 1992. The appellees allege, pursuant to Aimable, that the evidence showed that only Luxama, not the

_____

[12] The Department of Labor additionally commented on this issue, stating that, despite Aimable,

> the great weight of the case law supports consideration of the degree of permanency and exclusivity in the relationship between the workers and the putative employer in the context of the agricultural operation in question. The duration of that operation necessarily affects the duration or permanency of that relationship. Where an FLC and the workers are engaged for the duration of the operation and are obligated to work only for or be available to the agricultural employer/association at his/her discretion during that period, that information bears directly on the question of the workers' economic dependence. Other courts have found this factor relevant and the Department believes that duration of the relationship should be one of the factors considered in determining joint employment.

Agricultural Workers Protection Act, 62 Fed. Reg. at 11,740 (citations omitted).

14

appellees, had the ongoing relationship with the appellants. The appellees also argue that no evidence indicated that the appellants harvested the snap bean crop in 1990 or 1991, and that the evidence showed that some of the appellants may have worked at a different farm during the snap bean harvest, and others may have chosen to stay home on certain days during the harvest.

Other courts have considered this issue and have found that "[h]arvesting of crops is a seasonal industry, without much permanence beyond the harvesting season. However temporary the relationship may be . . . the relationship is permanent . . . [if] the migrants work only for [the] defendants during that season." Haywood v. Barnes, 109 F.R.D. 568, 589 (E.D. N.C. 1986) (quoting Donovan v. Gilmor, 535 F. Supp. 154, 162 (N.D. Ohio), appeal dismissed, 708 F.2d 723 (6th Cir. 1982)). Another court has found that "[o]ne indication of permanency . . . is the fact that it is not uncommon for the migrant families to return year after year." Secretary of Labor v. Lauritzen, 835 F.2d 1529, 1537 (7th Cir. 1987), cert. denied, 488 U.S. 898 (1988). Luxama and the appellants harvested snap beans on the Burtons' farm in 1992. While this harvest was seasonal, the Burtons expected Luxama's crew to harvest the entire snap bean crop. Luxama and the appellants also worked for another farm during this snap bean harvest.[13] While Luxama returned between 1990 and 1992 to harvest the Burton's snap bean crop, the appellants presented no evidence to show that all of them picked snap beans for the Burtons during these dates. Therefore, we find that the appellants have failed to meet the permanency and exclusivity factor, and this factor weighs against a determination that the appellants were economically dependent on the appellees.

**4. The extent to which the services that the appellants rendered are repetitive, rote tasks requiring skills that are acquired with relatively little training**

---

[13] Luxama stated that at times he would send some of the appellants to pick snap beans at a nearby farm in Tifton, Georgia. Luxama Dep. at 56.

15

The district court also failed to consider this factor in determining that the appellees were not joint employers of the appellants, and the Aimable court found that an analysis of this factor fails to aid in this determination. See Aimable, 20 F.3d at 444. We, however, choose to analyze this factor, since it is included in the AWPA's regulations.[14] It is unquestionable that the services that the appellants rendered -- picking snap beans -- is a repetitive and rote task requiring relatively little training. Therefore, we find that this factor weighs in favor of concluding that the appellants were economically dependent on the appellees.

**5.   Whether the activities that the appellants performed are an integral part of the appellees' overall business operation.**

This factor is "probative of joint employment because a worker who performs a routine task that is a normal and integral phase of the grower's production is likely to be dependent on the grower's overall production process." Antenor, 88 F.3d at 937. The district court held that this factor favored the appellants, finding that they "performed a line-job integral to the harvesting and production of salable vegetables." Charles, 857 F. Supp. at 1581 (quoting Aimable, 20 F.3d at 444). While the Burtons contend that their snap bean harvest comprised a

_____

[14] The Department of Labor explained:

> [C]ourts have considered the worker's degree of skill to be a relevant and probative factor in the determination of [economic] dependence. In common experience in the agricultural industry and other contexts, there is a reasonable correlation between the worker's degree of skill and the marketability and value of his/her services. In the free market place, an unskilled task may easily be learned and performed by almost any worker is a task for which many workers (both trained and untrained) can realistically compete, and is also a task for which the competing workers would not be able to demand or expect high wages. The lower the worker's skill level, the lower the value and marketability of his/her services, and the greater the likelihood of his/her economic dependence on the person utilizing those services.

Agricultural Worker Protection Act, 62 Fed. Reg. at 11,740-41.

16

small percentage of their overall farming operations, we find that this factor weighs in favor of determining that the appellants were economically dependent on the Burtons, Little Rock and Hall because the appellants' picking of snap beans was integral to both harvesting and producing snap beans -- the appellees' business.

**6.  Whether the work is performed on the appellees' premises, rather than on premises that another business entity owns or controls**.

This factor is probative of joint employment because "without the land, the worker might not have work, and because a business that owns or controls the worksite will likely be able to prevent labor law violations, even if it delegates hiring and supervisory responsibilities to labor contractors."  Antenor, 88 F.3d at 937 (citing Gulf King Shrimp Co. v. Wirtz, 407 F.2d 508, 513-14 (5th Cir. 1969)).  The district court correctly found that the appellants picked snap beans on the Burtons' property, which provides indicia that the Burtons employed the workers.  The district court also found, however, that no party presented any evidence that the appellants performed any work on the property of either Little Rock or Hall.  Thus, we find that this factor weighs in favor of finding that the appellants were economically dependent on the Burtons, but were not economically dependent on either Little Rock or Hall.

**7.  Whether the appellees undertook responsibilities in relation to the appellants that employers commonly perform**.

The district court did not consider this factor, finding that one of its considerations, "investment in equipment and facilities," to be irrelevant pursuant to Aimable.  Aimable, 20 F.3d at 443; Charles, 857 F. Supp. at 1579.  Once again, because this factor is enunciated in the AWPA's regulations, and considered in Antenor, we consider it as guidance in our determination

17

of "economic dependence" and "joint employment."[15]  The evidence, viewed in the light most favorable to appellants, demonstrates that neither Little Rock, Hall nor the Burtons had any responsibility in preparing or making payrolls, paying FICA taxes, or providing workers compensation insurance for the appellants.  Little Rock issued checks to Luxama for the number of boxes his crew picked, but these payments were advances to the Burtons for their labor costs.  Luxama paid the appellants for the number of boxes they picked and provided housing and transportation for the appellants.  Little Rock also provided the Burtons with boxes for the appellants to place the picked snap beans in and provided a trailer for the Burtons to transport the snap beans to Little Rock's packing shed.  Although the appellees provided certain materials useful in the appellants' work, which is probative of the appellants' economic dependence on the appellees, the appellees did not undertake any other functions that an employer normally performed.  Thus, we find that this factor weighs in favor of determining that the appellants were not economically dependent on the appellees.

In considering all of these factors, we realize that "no one factor is determinative," and that the existence of joint employment "depends on the economic reality of <u>all the circumstances</u>."  <u>Antenor</u>, 88 F.3d at 932 (quotations and citations omitted).  We note that "the

---

[15]  The Department of Labor commented:

> Where a putative employer provides materials or services, undertakes functions normally performed by an employer (such as providing workers' compensation, paying FICA taxes, transporting or housing workers, providing the tools and equipment necessary to the work), such behavior indicates that it is his/her interest to perform such functions that are commonly performed by employers rather than rely on the FLC.  Further, workers who use the services, materials or functions are in a very tangible way economically dependent on the entity performing these functions.

Agricultural Workers Protection Act, 62 Fed. Reg. at 11,741-42.

absence of evidence on any one or more of the criteria listed does not preclude a finding that an . . . agricultural employer was a joint employer along with the crewleader." Antenor, 88 F.3d at 933 (quotations and citations omitted). We also note that since the AWPA is a remedial statute, we must construe it broadly. See Caro-Galvan, 993 F.2d at 1505 ("AWPA is a remedial statute and should be construed broadly to effect its humanitarian purpose."). Based on our analysis of the factors, we hold that the appellants were economically dependent on the Burtons, and, as a matter of law, that the Burtons employed the appellants under the AWPA. The Burtons enjoyed a sufficient degree of indirect supervision and control over the appellants, supplied the land and ultimately decided when, where and how long the appellants would harvest their snap bean crop. Further, the appellants performed services that required little training, yet were integral to the Burtons' farming operation. Because we hold that the Burtons employed the appellants, they are liable as joint employers for violations of section 1841 of the AWPA. We also hold that, based on our analysis of these factors, Little Rock and Hall did not employ the appellants within the meaning of the AWPA.[16]

## IV. UTILIZATION OF SERVICES

The next issue we discuss is whether the appellees "utilized" Luxama's services. See 29 U.S.C. § 1842. According to section 1842, unless a person utilizes the services of a farm labor contractor to supply an agricultural worker, there is no responsibility to be concerned about the

---

[16] We note the district court's holding that to find the Burtons joint employers under the AWPA, "every farmer who hired a farm labor contractor would become for purposes of the AWPA . . . a joint employer of the contractor's employees." Charles, 857 F. Supp. at 1581-82. We disagree, finding that the economic reality of the facts in this case indicate that the Burtons employed the appellants. We caution district courts to analyze each of these enunciated factors as guidance, taking into account the facts of each case, and the economic reality of each situation, to determine whether a farm worker is economically dependent on an agricultural employer.

19

farm labor contractor's certificate of registration. See 29 U.S.C. § 1842. Even though Little Rock and Hall did not "employ" appellants, they can be liable under section 1842 because it speaks only of a person who utilizes the services of an FLC, not an "employer."

The district court granted Little Rock's and Hall's motions for summary judgment on this issue, finding that neither Little Rock nor Hall "utilized" Luxama's services because the Burtons exercised the discretion to hire Luxama, and exercised subsequent control over Luxama and the appellants. See Charles v. Burton, No. 92-150-VAL (M.D. Ga. Mar. 7, 1995).

We find that the district court did not err in granting summary judgment for Hall and Little Rock, based on our analysis of "joint employment" and "economic dependence." The appellants presented no evidence that Little Rock or Hall engaged in directing, controlling or supervising the appellants. Further, Little Rock and Hall did not hire Luxama, but instead delegated the decision of hiring and paying for snap bean labor to the Burtons. Therefore, we agree with the district court that neither Little Rock nor Hall "utilized" the services of Luxama and the appellants. The Burtons however, concede that they utilized Luxama's services. We agree with the district court that the Burtons "utilized" the services of Luxama and the appellants, based on this same analysis.

## V. DAMAGES

Having utilized the services of appellees, there was a statutory obligation on the part of John and Felix Burton to "first take[ ] reasonable steps to determine that the farm labor contractor possesse[d] a certificate of registration which [was] valid and which authorize[d] the activity for which the contractor [was] utilized." 29 U.S.C. § 1842. The Burtons concede they failed to determine if the farm labor contractor had a valid certificate authorizing him to transport agricultural workers. See Burtons' Brief in Support of Mot. for Summ. J. at 4 ("The

20

Burtons did not check to see if [Luxama] had a certificate of registration when he came to the Burton's farm with the Haitian crew to pick beans.").

The district court granted the Burtons' motion for summary judgment in part, finding that the AWPA's legislative history failed to adopt a position on strict liability, and finding that the Burtons were not liable for the appellants' actual damages because their failure to check Luxama's certificate of registration was "too far removed from the type of harm complained of" to attribute actual damages to the Burtons. The district court therefore found that it should only award statutory damages of up to $500. Charles v. Burton, No.7:92-cv-150 (M.D. Ga. Sept. 8, 1995). The district court later awarded the appellants $350 in statutory damages, finding the Burtons' violations to be "technically intentional." See 29 U.S.C. 1854(c)(1); Charles v. Burton, No. 92-150-VAL (M.D. Ga. July 26, 1996).

The district court erred by holding that the Burtons' failure to verify Luxama's registration, in violation of 29 U.S.C. § 1842, was too far removed from the appellants' injuries to warrant actual damages under 29 U.S.C. § 1854(c). Appellants do not claim the Burtons are responsible for the accident or their resulting physical injuries. Instead, they claim an inability to obtain medical care and a lack of compensation for lost wages because Luxama had no insurance coverage. Such a lack of access to insurance proceeds is an injury separate and distinguishable from appellants' physical injuries. See, e.g., Huff v. Standard Life Ins. Co., 897 F.2d 1072, 1074 (11th Cir. 1990) ("[T]he very essence of" a cause of action for negligent delay in the processing of an insurance application "is that the insurance company's negligence caused the absence of insurance coverage, which in turn damages the applicant."), cert. denied, 499 U.S. 936 (1991); Michigan Abrasive Co., Inc. v. Poole, 805 F.2d 1001, 1003, 1005-06 (11th Cir. 1986). This is true even though appellants do not claim that the Burtons' actions caused them to be uninsured,

21

but instead claim that the Burtons' actions precluded them from having access to insurance coverage which another person, in this case Luxama, was required to maintain. See, e.g., Lippincott v. Exotica Imports, Inc., 413 So.2d 66, 67 (Fla. Dist. Ct. App. 1982) (Defendant, an automobile dealer, sold a vehicle to a purchaser who did not have insurance coverage, dealer failed to verify that purchaser had insurance coverage, plaintiff was involved in an automobile accident while a passenger in purchaser's vehicle, plaintiff sued dealer, and court held that dealer "should be responsible to" plaintiff because it "did cause injury to [plaintiff] in that [plaintiff] was without the protection of [insurance] benefits at the time of the accident."). The Burtons' failure to check Luxama's certificate of registration was not far removed from the appellants' inability to obtain medical care and compensation for lost wages at all.

Luxama did not possess a certificate of registration and had no insurance to cover the damages that resulted from plaintiffs' physical injuries. To obtain a certificate of registration, Luxama, like any other farm labor contractor, would have had to produce documentation showing that he had an insurance policy or liability bond which insured "against liability to persons . . . arising from the ownership, operation, or the causing to be operated, of any vehicle used to transport any migrant or seasonal agricultural worker." 29 U.S.C. § 1841(b)(1)(C); see 29 U.S.C. § 1812(2).

If the Burtons had utilized a farm labor contractor with a valid certificate of registration, there would have been insurance to cover appellants' physical injuries. See 29 U.S.C. §§ 1812(2); 1841(b)(1)(C). This uncontested fact is contrary to the district court's decision that "defendants' failure to check Mr. Luxama's certificate of registration is simply too far removed from the type of harm complained of for actual damages to be attributable to defendants." The Burtons' failure to determine whether Luxama had a valid certificate of registration was a

22

proximate cause of the appellants' damages, not their physical injuries, but the damages that accrued because there was no insurance to cover their medical care and lost wages.

## VI. CONCLUSION

Based on the foregoing, we reverse the district court's holding that the Burtons did not employ the appellants, affirm the district court's finding that neither Little Rock nor Hall employed the appellants or utilized their services, and remand this case to the district court to consider damages for the Burtons' failure to ensure that the automobiles transporting the appellants carried insurance or a liability bond, in violation of 29 U.S.C. § 1841, and to consider damages for the Burtons' failure to verify Luxama's certificate of registration before utilizing his services, in violation of 29 U.S.C. § 1842.

**AFFIRMED IN PART, REVERSED IN PART and REMANDED.**

RONEY, Senior Circuit Judge, concurring in part and dissenting in part:

In Part III of this opinion, the Court reverses the summary judgment entered in favor of John and Felix Burton and holds that appellees did "employ" the appellants, that they were "agricultural employers" or "joint employers" within the meaning of the AWPA and that therefore they were statutorily required to carry insurance or a liability bond under section 1841. I respectfully dissent from that portion of the opinion.

The Court correctly identifies the regulatory factors and case law that must guide us in determining whether an employment relationship exists. I believe that application of these factors, however, yields the opposite result.

There are two controlling cases in this circuit involving seasonal and migrant farm workers which apply these several factors and that guide the decision. In *Aimable v. Long & Scott Farms*, 20 F.3d 434, 438 (11th Cir.), *cert. denied*, 513 U.S. 943 (1994), this Court held in a suit under both the Fair Labor Standards Act (FLSA) and the Agriculture Workers Protection Act that the "growers," the owners and operators of the farm upon which the laborers worked was not a joint employer with the contractor. In *Antenor v. D&S Farms*, 88 F.3d 925, 929 (11th Cir. 1996), involving a similar suit, we held that the growers and the labor contractor were joint employers. At first glance, it might appear that these two cases conflict. Closer

24

examination of the facts in each of the cases reveals the substantial differences that led to different conclusions.

What this issue boils down to then is whether the defendants are like the non-employer growers in the *Aimable* case, or like the employer growers in the *Antenor* case. I have constructed a chart attached hereto as an appendix showing the decision as to each regulatory factor made in *Aimable*, *Antenor*, and by the district court and the panel in this case, and the evidence on each point. This chart clearly shows that the defendants are more like the growers in *Aimable* than like the growers in *Antenor*. A study of the chart will indicate that further discussion in this part of this opinion would be redundant. I would therefore affirm, based upon the evidence revealed in the chart, and the decision of the district court that the Burtons were not joint employers of the plaintiffs in this case and therefore had no duty to carry insurance or a liability bond under section 1841 of the AWPA.

I concur in the other portions of the court's opinion.

**APPENDIX**
**RE: NO. 96-9212, <u>CHARLES V. BURTON</u>**

**APPLICATION OF THE FACTORS (Column 1)**
**INDICATING A JOINT EMPLOYMENT RELATIONSHIP**

**CASES, THEIR HOLDINGS AND ANALYSIS**

| | <u>Aimable v. Long & Scott Farms</u>, 20 F.3d 434 (11th Cir. 1994) (<u>Tjoflat</u>, Birch, Henderson)<br><br>Held: Growers were not joint employers. | <u>Antenor v. D & S Farms</u>, 88 F.3d 925 (11th Cir. 1996) (<u>Barkett</u>, Carnes, Dyer)<br><br>Held: Growers were joint employers. | <u>Charles v. Burton</u> (district court's order)<br><br>Held: Burtons were not joint employers of plaintiffs. | Per Curiam Opinion <u>Charles v. Burton</u>, No. 96-9212 ( Hatchett, Roney, Clark)<br><br>Held: Burtons were joint employers. | Judge Roney's dissent<br><br>Held: Burtons were not joint employers. |
|---|---|---|---|---|---|
| Nature and degree of control of workers. | Does not support a finding of joint employment. Long & Scott did not control number of workers hired, did not demand that FLC hire or fire specific individuals, and did not select specific workers to do specific jobs. Agricultural decisions like deciding which crops to harvest at a particular time cannot be likened to "control" in AWPA sense. | Supports finding of joint employment. Growers told FLC how many farm workers to bring each day, determined precise moment picking would begin each day, were free to delay or stop workers from continuing their work, and had ability to (and in fact did) assign work to specific workers. | Does not support finding of joint employment. Although Burtons retained a degree of control over harvest in that they directed which fields would be picked, they maintained no control over <u>manner</u> in which beans were picked. Details of harvest were left to Luxama. | Supports finding of joint employment. Burtons determined particular fields plaintiffs should cultivate, when plaintiffs would begin picking each field, and supplied plaintiffs with boxes that Little Rock provided. Burtons did not, however, tell Luxama when to commence picking each day and did not determine whether a specific worker should be disciplined. | Does not support a finding of joint employment. The type of decisions referred to by the panel are agricultural decisions relating to the harvest, not worker management decisions as discussed in <u>Aimable</u> and <u>Antenor</u>. The panel acknowledges Burtons did not make direct worker management decisions such as when the growers would commence picking or when a worker should be disciplined. |

26

| Degree of supervision of work. | Does not support a finding of joint employment. Although Long & Scott employees regularly came to the field, they rarely provided direction to plaintiffs' work. While Long & Scott employees occasionally gave FLC commands that were relayed to plaintiffs, Long & Scott generally left supervision and oversight to FLC. | Supports a finding of joint employment. Growers told workers when to begin picking, distributed boxes, and directly oversaw and intervened in pickers' work on daily basis. For example, a supervisor who worked for the growers made sure baskets were full and made sure no trash was in baskets, and growers complained to FLC that job was not going fast enough. | Does not support a finding of joint employment. Burtons maintained extremely limited degree of supervision by checking progress of harvest 2-3 times per day. Luxama was primarily responsible for supervision of workers. | Supports finding of joint employment. Burtons directed Luxama to tell plaintiffs to harvest certain areas of farm and monitored harvesting several times per day. Burtons, however, entrusted most of direct supervision and oversight to Luxama. | Does not support a finding of joint employment. While Burtons directed Luxama to the appropriate fields for harvesting, the Burtons did not direct the work of the harvest or supervise the plaintiffs in the field. Monitoring the harvest several times a day is akin to the "infrequent assertions of minimal oversight" discussed in Aimable. |
|---|---|---|---|---|---|

| | | | | | |
|---|---|---|---|---|---|
| Power to determine rates and methods of pay. | Does not support a finding of joint employment. FLC alone determined plaintiffs' wages, which workers to pay on piece-rate basis or hourly basis, and when and if to increase wages. | Supports finding of joint employment. Growers' exercise of some control over pickers' pay evidenced by fact that they deducted money for worker's compensation insurance and social security from amount they paid FLC per box picked and gave FLC a separate check for the employer and employees' share of taxes. Growers decided which insurance to buy and named themselves as the policyholders. This limited FLC's freedom to allocate money he received for his services. | Does not support a finding of joint employment. Luxama determined how much, when, and the manner in which plaintiffs were paid. Citing Aimable, court rejected contention that Burtons determined pay because they paid Luxama and plaintiffs' pay necessarily depended on what Luxama was paid. | Does not support a finding of joint employment. Luxama controlled pay rates, determined how plaintiffs received their pay and when they received payment. The panel considered paying social security taxes and providing workers compensation under an additional factor enunciated in the 1997 amendments to the AWPA, "Whether the appellees undertook responsibilities in relation to the appellants that employers commonly perform," concluding that the evidence demonstrated the Burtons had no responsibility in paying, FICA taxes or providing workers compensation insurance for plaintiffs. | Does not support a finding of joint employment. Luxama controlled the rates and method of payment. Does not support a finding of joint employment. Luxama controlled pay rates, determined how plaintiffs received their pay and when they received payment. We consider paying social security taxes and providing workers compensation under an additional factor enunciated in the 1997 amendments to the AWPA, "Whether the appellees undertook responsibilities in relation to the appellants that employers commonly perform," and conclude that the evidence demonstrated the Burtons had no responsibility in paying, FICA taxes or providing workers compensation insurance for plaintiffs. |

| Right to hire, fire, or modify employment conditions. | Does not support a finding of joint employment. Long & Scott never mandated that a worker be hired or fired, never shifted a worker from one pay classification to another or from one task to another, and never dictated hours a worker was to work. | Supports finding of joint employment. Growers had power to veto FLC's hiring decisions and to modify conditions such as hours pickers worked. For example, the growers monitored pickers' job qualifications instead of relying on FLC to do so when they stopped work until they could verify compliance with new immigration laws. Also, growers dictated pickers' hours by deciding when work would begin, by forcing pickers to stop working when prices were bad, and by once sending other picking crews into fields, causing plaintiffs to run out of work by noon. | Does not support a finding of joint employment. No evidence that Burtons had authority to hire or fire individual workers. Weather, size of beans, size and skill of crew, and acreage all determined amount of time plaintiffs could work. But within the time allowed by these factors, Luxama controlled the number of hours plaintiffs worked, and decided which task each would perform. For example, not every plaintiff actually picked beans -- some collected boxes and distributed tickets. | Supports a finding of joint employment. Burtons planted and fertilized the snap bean crop and directed Luxama to have plaintiffs harvest it on certain dates. Burtons decided ultimately when plaintiffs would begin picking the crop, where they would pick it, and for how long. Burtons, however, did not enjoy "veto" power over Luxama's hiring decisions and did not modify conditions such as plaintiffs' daily hours. | Does not support a finding of joint employment. No evidence that Burtons had power to make hiring or firing decision or to modify conditions such as the hours plaintiffs worked. The fact that the Burtons planted and fertilized the crop and directed Luxama to harvest it on certain dates does exhibit the type of specific power over plaintiffs' employment conditions contemplated in Antenor and Aimable. |
|---|---|---|---|---|---|

29

| Permanency and exclusivity and duration of employ-ment. | Factor irrelevant because it demonstrates only that plaintiffs were employees of FLC, not whether they were also employees of Long & Scott: (1) the fact that FLC worked for Long & Scott for many years has no bearing on whether plaintiffs were employed jointly by Long & Scott, and (2) plaintiffs worked exclusively for FLC during harvest seasons at Long & Scott's farms and other farms. | Did not discuss. | Did not consider, following Aimable's holding that this factor is irrelevant to determine joint employment status. | Factors weighs against finding of joint employment. Plaintiffs (and Luxama) worked for another farm during snap bean harvest. Although Luxama returned to Burtons' farm three years, plaintiffs did not present evidence that they returned all three years. (Despite Aimable's holding that this factor is irrelevant, Judge Hatchett considered this factor because it is listed in the 1997 amendments to AWPA regulations.) | Does not support a finding of joint employment. Plaintiffs (and Luxama) worked for another farm during snap bean harvest. Although Luxama returned to Burtons' farm three years, plaintiffs did not present evidence that they returned all three years. Need to address this factor because it is listed in the 1997 amendments to AWPA regulations. |
|---|---|---|---|---|---|
| Degree of skill required to perform the job. | Factor not relevant because it shows only that crop pickers were employees, not who employed them. | Did not discuss. | Did not consider, following Aimable's holding that this factor is irrelevant in analyzing joint employment. | Weighs in favor of finding of "economic dependence." Picking beans is a repetitive, rote task requiring little training. (Despite Aimable's holding that factor irrelevant, Judge Hatchett considered this factor because it is listed in the 1997 amendments to AWPA regulations.) | Irrelevant to this analysis because it supports finding of economic dependence, but does not address issue of joint employment. |

30

| Perform-ance of a specialty job integral to business. | Favors finding of joint employment because crop-picking was "a line-job integral to the harvesting and production of salable vegetables." | Favors finding of joint employment because picking was line job integral to growers' overall production process. | Favors finding of joint employment because plaintiffs performed a line-job integral to the harvesting and production of salable vegetables. | Favors finding of joint employment because picking snap beans was integral to both harvesting and producing snap beans, which is the Burtons' business. | Supports finding of joint employment because picking snap beans was integral to both harvesting and producing snap beans, which is the Burtons' business. |
|---|---|---|---|---|---|
| Owners hip of facilities where work occurred. | Favors finding of joint employment because crop-pickers worked on land owned by Long & Scott. | Favors finding of employment because pickers worked on land owned by growers. | Favors finding of joint employment. No dispute that the work was performed on the Burtons' farm. | Favors finding of joint employment because Burtons owned property where crops were grown. | Supports finding of joint employment because Burtons owned property where crops were grown. |
| Preparat ion of payroll and payment of wages. | Does not support finding of joint employment. FLC was responsible for calculating plaintiffs' wages and paying wages. | Supports finding of joint employment. Growers computed and segregated social security taxes and purchased worker's compensation insurance. | Does not favor finding of joint employment. Luxama paid wages. Neither Luxama nor the Burtons prepared a payroll. | Does not support finding of joint employment. Burtons had no responsibility in preparing or making payrolls, paying FICA taxes, or providing worker's compensation insurance. | Does not support finding of joint employment. Burtons had no responsibility in preparing or making payrolls, paying FICA taxes, or providing worker's compensation insurance. |

| | | | | | |
|---|---|---|---|---|---|
| Investment in equip-ment and facilities. | Irrelevant. Shows that plaintiffs were employees, not independent contractors, because they had little or no investment in equipment. It does not show who employed them, however, because Long & Scott and FLC made significant investments in equipment and facilities (for example, FLC invested in trucks, tools, and a labor camp where pickers lived while Long & Scott invested in mule train, crates, and facilities). | Supports finding of joint employment. Growers owned virtually all equipment and facilities used by farm workers: picking boxes, lids and wires used to close them, pallets on which boxes placed, and trucks used to transport boxes to packinghouse. FLC had no equipment or vehicles of his own. | Did not consider, following Aimable's holding that this factor is not relevant to analysis of joint employment. | Does not support finding of joint employment. JWH considered this factor together with the "preparation of payroll ..." factor above (in accordance with AWPA regulations, he considered both factors under the collective heading, "Whether the appellees undertook responsibilities in relation to the appellants that employers commonly perform"),and concluded that although Little Rock provided boxes and a trailer for the Burtons to use, and "[a]lthough the appellees provided certain materials useful in the appellants' work, . . . the appellees did not undertake any other functions that an employer normally performed.") | Irrelevant to this analysis because it supports a finding of economic dependence, but does not address issue of joint employment. |

| Opportunity for profit and loss. | Irrelevant. Plaintiffs had no opportunity for profit or loss. Although this shows that plaintiffs were not independent contractors, it does not show who their employer was. | Did not discuss. | Did not consider, following Aimable's holding that this factor does not aid the analysis of joint employment. | Did not discuss. | Need not consider as it does not aid the joint employment analysis. |
|---|---|---|---|---|---|